**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRESENIUS KABI USA, LLC,

   *Plaintiff*,

 v.           Civil Action No. 25-375 (TJK)

UNITED STATES OF AMERICA, *et al.*,

   *Defendants*.

### MEMORANDUM OPINION

  Fresenius Kabi USA, LLC is a manufacturer of injectable drug products that participates in the Medicaid Drug Rebate Program administered by the Centers for Medicare and Medicaid Services, or CMS. Through that program, it pays rebates to states based on a drug's classification and, in exchange, that drug is eligible for Medicaid coverage. In general, manufacturers pay higher rebates for "innovator" drugs than for "noninnovator"—or generic—drugs. In 2021, Fresenius Kabi petitioned CMS to reclassify several of its drugs as noninnovators, so it would pay lower rebates. In September 2024, CMS denied the request, but informed Fresenius Kabi that it could respond within a month to supplement or clarify its position, but if it did not, the decision would be final. Fresenius Kabi timely responded, then followed up by suing CMS, the Department of Health and Human Services, and relevant officials, alleging that the decision was arbitrary, capricious, and contrary to law under the Administrative Procedure Act. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that CMS's decision was not final agency action, so Fresenius Kabi lacks a cause of action. The Court agrees, so it will grant the motion and dismiss the case.

## I.    Background

### A.    Statutory and Regulatory Framework

"Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004).  Congress created the Medicaid Drug Rebate Program "to offset Medicaid costs incurred by the federal government and the states for outpatient drugs provided to Medicaid recipients." *Council on Radionuclides & Radiopharmaceuticals, Inc. v. Azar*, 18-cv-633 (RBW), 2019 WL 5960142, at *2 (D.D.C. Nov. 13, 2019).  For a drug to be eligible for Medicaid reimbursement, the manufacturer must enter into a rebate agreement with the Department of Health and Human Services to pay rebates to states.  42 U.S.C. §§ 1396r-8(a)(1), (c)(1)(A), (c)(3)(A).  The rebate rate for a drug depends on its classification as either: (1) "single source" (2) "innovator multiple source" or (3) "noninnovator multiple source"—a generic drug.  *See id*. §§ 1396r-8(c)(1), (3); *id.* § 1396r-8(k)(7)(A).  Rebate rates for noninnovator drugs are lower than those for single source and innovator drugs. *See id.* § 1396r-8(c).  In 2016, CMS established a "narrow exception" process through which, under certain circumstances, drug manufacturers could apply to have an innovator drug treated as a noninnovator for purposes of calculating rebate liability.  *See* ECF No. 1 ¶ 69; *see also* 42 C.F.R. § 447.502.  The process was intended "to ensure that drugs that are or were required to be marketed under an original new drug application for technical reasons would not be erroneously classified as innovators."  ECF No. 1 ¶ 69 (citation omitted).

### B.    Procedural Background

Fresenius Kabi is a global health care company and drug manufacturer.  ECF No. 1 ¶ 9. One of the drugs it manufactures is heparin, a common anticoagulant. *Id.* ¶¶ 1–2, 75.  Fresenius Kabi's heparin products come in many forms, including vials, prefilled syringes, and—relevant

here—pre-mixed intravenous bags. *Id.* ¶ 2. In June 2021, Fresenius Kabi requested a narrow exception for several heparin products—including four types of premixed heparin bags and one type of prefilled heparin syringe. *Id.* ¶ 96. Between February and March 2024, CMS granted narrow exceptions for some of these products, including heparin vials and prefilled syringes. *Id.* ¶¶ 100–101.

On September 30, 2024, though, CMS sent Fresenius Kabi a letter denying the company's request for a narrow exception for four of its heparin bag products. *See generally* ECF No. 1-8. The letter informed Fresenius Kabi that CMS had "decline[d] to . . . grant a narrow exception and den[ied] [its] request to report the drugs . . . as noninnovator multiple source . . . drugs." *Id.* at 2. CMS further advised Fresenius Kabi that "[i]f [it] ha[d] any questions or concerns" about the letter, it should "respond within 30 days . . . with any supplements to or clarifications of [its] positions in [its] request" and to "include detailed supporting documentation if available." *Id.* at 5. Moreover, the letter provided that "[i]f [CMS] does not receive any written response by 30 days, then the decision in this letter is final." *Id.*

On October 29, 2024, Fresenius Kabi responded with its own letter, challenging CMS's decision as both outside its legal authority and in violation of "CMS guidance and precedent." ECF No. 19-5 at 3. The letter also advised that, unless the agency rescinded the decision by December 2, 2024, Fresenius Kabi intended "to amend its complaint in . . . pending litigation . . . to establish that *all* of the heparin products marketed by Fresenius Kabi are . . . noninnovator drugs . . . entitled to narrow exceptions." *Id.* (emphasis in original).[1] Fresenius Kabi included with its

---

[1] In March 2024, Fresenius Kabi filed a separate lawsuit seeking to clarify the effective date of narrow exceptions granted for drugs not at issue here. *See Fresenius Kabi USA, LLC v. United States*, 24-cv-676 (TJK) (D.D.C. Oct. 11, 2024) ("*Fresenius Kabi I*").

letter a 30-page white paper "setting forth more fully [its] intended legal challenge."  *See id.* at 5.[2]

CMS has not yet responded.  *See* ECF No. 25 at 11.

Rather than amend its pending complaint, however, Fresenius Kabi filed this lawsuit on February 7, 2025, against the United States, the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and officials in charge of these agencies.  It alleges that CMS's decision declining to classify the four heparin bag products as noninnovators was arbitrary, capricious, and contrary to law under the Administrative Procedure Act ("APA").  *See* ECF No. 1 at 31–37.  Defendants move to dismiss, arguing that CMS's decision was not final agency action reviewable under the APA, so Fresenius Kabi lacks a cause of action.  ECF No. 19.[3]

## II.    Legal Standard

To survive a motion under Rule 12(b)(6), a plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face and to nudge [its] claims across the line from conceivable to plausible."  *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (internal quotations omitted).  To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the

---

[2] The Court may consider Fresenius Kabi's response letter and white paper, attached as an exhibit to Defendants' motion to dismiss, *see* ECF No. 19-5, as documents "referred to in the complaint," *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023) (internal quotations omitted); *see also* ECF No. 1 ¶ 21 ("Fresenius Kabi subsequently asked CMS on October 29, 2024 to rescind its decision in the hope of avoiding litigation.").

[3] Defendants also move for relief from Local Rule 7(n).  ECF No. 20.  That rule generally requires an agency to "file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first."  LCvR 7(n)(1).  Because the Court concludes, based on the pleadings and documents incorporated by reference, that the decision is not final agency action, consideration of the entire administrative record is unnecessary. *See Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).  Thus, the Court will grant Defendants' motion to waive compliance with Local Rule 7(n).

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When evaluating such a motion, a court must "treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all reasonable inferences from the facts alleged." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up).

## III.    Analysis

Defendants argue that CMS's decision was not final agency action reviewable under the APA, and so Fresenius Kabi lacks a cause of action. They are right that "where there is no final agency action, a plaintiff has no cause of action under the APA." *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018). "Thus, although the absence of final agency action would not cost [the Court its] jurisdiction," it would cost Fresenius Kabi its "APA cause of action." *Trudeau*, 456 F.3d at 188–89; *see Oryszak v. Sullivan*, 576 F.3d 522, 525 n.2 (D.C. Cir. 2009). As explained below, the Court agrees that CMS's decision was not final agency action under the APA.

The finality inquiry is governed by the two-prong test set forth in *Bennett v. Spear*, which states that to be final, agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) be an action "by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). The Supreme Court has instructed lower courts to "apply the finality requirement in a 'flexible' and 'pragmatic' way." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967)). The CMS decision outlined in its September 30, 2024 letter to Fresenius Kabi fails *Bennett*'s first prong—it does not mark the consummation of the agency's decisionmaking process—for two reasons: it premised finality on a future, contingent event that did not occur and it permitted Fresenius Kabi

to submit additional material in support of its position, thereby triggering further agency consideration that may obviate the need for judicial review. Thus, the Court need not consider *Bennett*'s second prong to conclude that CMS's decision was not final agency action.

First, the CMS decision was not final because it premised finality on a future, contingent event—Fresenius Kabi's nonresponse—that did not occur. "To mark the consummation of the agency's decision making, the action must mark a definitive position, rather than being merely tentative or interlocutory." *Or. Health & Sci. Univ. v. Engels*, 24-cv-2184 (RC), 2025 WL 1707630, at *5 (D.D.C. June 17, 2025), *appeal dismissed sub nom. Mainegeneral Med. Ctr. v. Engels*, No. 25-5297, 2025 WL 2982893 (D.C. Cir. Oct. 21, 2025) (citation modified). When considering the first *Bennett* prong, the D.C. Circuit has looked to the relevant language of the challenged agency decision. *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012). The Court turns to that language.

The letter states, under the heading "Decision," that the agency "*declines* to exercise [its] discretion to grant a narrow exception and *den*[*ies*] [Fresenius Kabi's] request to report the drugs . . . as noninnovator[s]." ECF No. 25 at 13 (quoting ECF No. 1-8 at 2) (emphasis as quoted). In Fresenius Kabi's view, this definitive language—which is "neither preliminary nor tentative"—shows the decision's finality. ECF No. 25 at 13. But in assessing finality, the Court must consider the agency "document as a whole." *ForUsAll, Inc. v. Dep't of Lab.*, 691 F. Supp. 3d 14, 31 (D.D.C. 2023). And that includes the later paragraph advising Fresenius Kabi that, if it did not respond "with any supplements to or clarification of [its] positions" and "supporting documentation" within 30 days, "*then* the decision in this letter is final." ECF No. 1-8 at 5 (emphasis added).

For their part, Defendants argue that the letter "states on its face" that the decision "would only become final if CMS did not receive a timely response," and, because Fresenius Kabi did

timely respond, it is "clearcut" that the decision did not mark the consummation of the agency's decisionmaking process. ECF No. 19-1 at 12, 14. Fresenius Kabi disagrees, noting that "[t]he word '*only*' does not appear" in the decision. ECF No. 25 at 18. Thus, Fresenius Kabi argues, "the language simply cautions that if [it] did not request reconsideration within 30 days, it might miss the opportunity to do so." *Id.* Defendants have the better argument.

The CMS letter's use of "then" indicates that its finality was contingent on Fresenius Kabi's failure to respond within 30 days. *See Then*, Merriam Webster's Dictionary ("[A]s a necessary consequence."), https://perma.cc/MAG2-ZKXF. Agency "statements and conclusions" that are "tentative, open to further consideration, or conditional on future agency action" do not mark the consummation of the agency's decisionmaking process. *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007). As here, finality can also depend on an action or event outside the agency's control. *See Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006) (holding that an FAA letter was not "final" because it was "contingent," in part, "on congressional appropriation" and a municipality's filing of a grant application). And there is no dispute that the contingent event that would have triggered finality—Fresenius Kabi's nonresponse—did not happen. *See* ECF No. 1 ¶ 21. Rather, Fresenius Kabi responded to the letter within 30 days. So, "by its own terms," the letter "does not constitute the consummation of [CMS's] decisionmaking process." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1263 (D.C. Cir. 2018).

Fresenius Kabi dismisses this language as mere administrative "boilerplate," which, it argues, cannot render CMS's decision nonfinal for purposes of judicial review. ECF No. 25 at 15. Not so. True, the "mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an *otherwise final* agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012) (emphasis added). But that argument

puts the cart before the horse by assuming that CMS's decision was final agency action in the first place. As Defendants point out, the cases cited by Fresenius Kabi to support this argument involve otherwise final agency action. *See* ECF No. 27 at 10–12.

Start with the Supreme Court's decision in *Sackett v. EPA*. In that case, the plaintiff landowners challenged an order issued by the Environmental Protection Agency ("EPA") concluding that they had violated the Clean Water Act. *See Sackett*, 566 U.S. at 123. Although the order invited the plaintiffs to "engage in informal discussion of the terms and requirements of the order with the EPA and to inform the agency of any allegations therein which they believed to be inaccurate," the Court held that the order satisfied *Bennett*'s first prong and was final agency action. *Id.* at 127 (citation modified). But there, unlike here, the plaintiffs requested a hearing to challenge the agency's findings and, when EPA denied that request, the plaintiffs learned that the order was "not subject to further Agency review." *Id*. That "alone sufficiently distinguishes [CMS's decision] in this case from the [EPA's] enforcement order in *Sackett*." *Soundboard*, 888 F.3d at 1269. Here, by contrast, CMS *disclaimed* finality if Fresenius Kabi timely responded to the letter, which it did.

Fresenius Kabi's reliance on the D.C. Circuit's opinions in *Safari Club International v. Jewell*, *Appalachian Power Company v. EPA*, and *Friedman v. FAA* is equally misplaced. In *Safari Club*, the Circuit held that a ban on elephant trophy imports issued by the Fish and Wildlife Service constituted final agency action notwithstanding the "possibility that the Service may revise its decision based on new information." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (citation modified). But there, "[t]he Service ha[d] made abundantly clear that it would grant no [import] permits for 2014." *Id.* at 1289–90. By contrast, here CMS has not closed off further consideration of Fresenius Kabi's request for a narrow exception. Rather, CMS invited

Fresenius Kabi to submit further documentation in support of its position and withheld deeming its decision final if the company did so. *Appalachian Power* is inapposite for similar reasons. In that case, the Circuit rejected the EPA's argument that its nationwide emission-source monitoring guidance was nonfinal simply because it was "subject to change." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). But, unlike CMS's letter here, EPA's guidance did not invite regulated entities to submit further material challenging the agency's position. Indeed, CMS's decision is nonfinal not just because it may change "as all laws are subject to change," *id.*, but because the agency invited Fresenius Kabi to submit material to support its position, withheld finality if the manufacturer did so, and accepted the additional material for further consideration.

Finally, *Friedman v. FAA* does not compel a different outcome. In that case, a pilot seeking a commercial license from the Federal Aviation Administration ("FAA") refused multiple requests to provide required medical records. *See Friedman v. FAA*, 841 F.3d 537, 542 (D.C. Cir. 2016). After the applicant missed multiple deadlines to submit those records, the FAA told him that, although his application "remain[ed] under consideration," the agency was "unable to proceed with [a] further determination." *Id.* But the agency's statement that it could not—and thus would not—reach a determination on the application was the key to the court's conclusion that the agency had given its final word on the matter: "Where an agency has clearly communicated it *will not reach a determination* on a petitioner's submission due to petitioner's recalcitrance but simultaneously refuses to deny the petitioner's submission *on those grounds*, it has engaged in final agency action." *Id.* (emphasis added). Here, however, CMS has not said that it cannot or will not reach a final determination on Fresenius Kabi's request. None of the facts Fresenius Kabi alleges in its complaint "suggest[] that [the agency] is not seriously considering the additional materials and

9

arguments [it] timely submitted to the agency" in response to CMS's letter.  ECF No. 27 at 15.[4]

The second reason CMS's decision was not final is because it permitted Fresenius Kabi to submit additional material in support of its position, thereby triggering ongoing agency consideration that may obviate the need for judicial review.  "In assessing whether a particular agency action qualifies as final for purposes of judicial review, [the D.C. Circuit] and the Supreme Court have looked to the way in which the agency subsequently treats the challenged action."  *Sw. Airlines Co. v. United States Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) (collecting cases).  Relatedly, "'the extent to which [a] [party] may challenge' an action before the agency may also indicate how definitive the determination is."  *Or. Health & Sci.*, 2025 WL 1707630, at *5 (quoting *Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 241 (1980)).

Here, CMS invited Fresenius Kabi to submit additional materials in support of its position—which it did with its own letter and white paper.  *See* ECF No. 19-5.  When an "agency has been presented with new evidence that may alter the outcome of its . . . decision, the . . . denial does not mark the consummation of the agency's decisionmaking process and the APA does not provide a vehicle for its review."  *O'Sullivan v. U.S. Dep't of Health & Hum. Servs.*, 22-cv-1189 (CRC), 2024 WL 1071045, at *5 (D.D.C. Mar. 12, 2024) (citation modified), *appeal dismissed sub nom.*, No. 24-5117, 2024 WL 4394815 (D.C. Cir. Sept. 30, 2024).  CMS has not yet responded to Fresenius Kabi's letter.  ECF No. 25 at 11.  Thus, the agency's consideration of Fresenius Kabi's request, and the additional material it submitted, remains "[o]ngoing," which makes CMS's

---

[4] Fresenius Kabi also cites the Supreme Court's decision in *U.S. Army Corps of Engineers v. Hawkes Co.* to support its argument that CMS's decision is final agency action subject to this Court's review.  *See* ECF No. 25 at 16 (quoting 578 U.S. 590, 598 (2016)).  But there, the Army Corps conceded that the determination at issue marked the consummation of its decision-making process and thus did not dispute that *Bennett*'s first prong had been satisfied.  *See Hawkes*, 578 U.S. at 598.

decision "non-final and judicial review premature." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012). Indeed, "all that judicial review would do at this stage is disrupt the agency's process." *Scotts Valley Band of Pomo Indians v. Burgum*, 808 F. Supp. 3d 1, 14 (D.D.C. 2025), *dismissed*, No. 25-5472, 2026 WL 230024 (D.C. Cir. Jan. 27, 2026) (citation modified).

In assessing whether CMS's decision was final agency action fit for judicial review, *MediNatura, Inc. v. FDA* is instructive. 998 F.3d 931 (D.C. Cir. 2021). There, the Circuit affirmed the dismissal of an APA challenge to an FDA publication because the plaintiff failed to plausibly allege that the publication marked the consummation of the agency's decisionmaking. *See generally id.* In that case, MediNatura, a distributor of homeopathic drugs, challenged an FDA "Import Alert" barring importation of the plaintiff's products. *Id.* at 937. Before issuing the alert, FDA sent MediNatura a letter "explain[ing] that it considered the Products 'unapproved new drugs' . . . that . . . could not be distributed without approval." *Id.* A few days later, FDA issued an Import Alert formally banning importation of the drugs. *Id.* MediNatura argued, much like Fresenius Kabi does here, that the Import Alert marked the consummation of the FDA's decisionmaking process because the "FDA 'unambiguously stated' that the Products [were] unapproved new drugs." *Id.* at 940. Still, the Circuit noted that, "[a]fter the addition of a product to the Import Alert," MediNatura could still "submit evidence to establish the drug's admissibility" at a hearing. *Id.* at 939. Though CMS has not afforded Fresenius Kabi a hearing, what matters is that Fresenius Kabi "still enjoy[ed] an opportunity to convince the agency to change its mind" by submitting additional materials. *Id.* (citation omitted). Thus, as the *MediNatura* court noted, "treating [CMS's letter] as final agency action would not allow [CMS] 'an opportunity to apply its expertise and correct its mistakes.'" *Id.* (citation omitted).

Moreover, "[s]hould [Fresenius Kabi] succeed in convincing [CMS] that its products are

11

[noninnovators]," that would "obviate the need for judicial review." *MediNatura*, 998 F.3d at 939 (citation omitted). Indeed, Fresenius Kabi alleges that it responded to the letter in the "hope . . . that CMS might decide, as it has previously, to reverse course and grant Fresenius Kabi the relief it seeks," ECF No. 25 at 19, and in so doing "avoid unnecessary litigation," *id.* at 17. CMS may yet provide it that relief. Of course, Fresenius Kabi does not allege that CMS *never* reverses course when a regulated entity responds to a denial letter. To the contrary, it acknowledges that CMS has "previously" reversed a drug's classification upon receipt of new information, *id.* at 19, and it has not alleged nor asserted any plausible reason why CMS may not do so here.[5] But rather than let that process play out, Fresenius Kabi sued four months after responding to CMS's decision. Because "completion of [CMS's] processes may obviate the need for judicial review," its decision is best characterized as nonfinal. *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1215 (D.C. Cir. 1996). To be sure, if Fresenius Kabi "is unhappy with the outcome of that process once it has ended, it may seek judicial review then." *Id.* at 1216.

In response, Fresenius Kabi argues that Section 704 of the APA forecloses any assertion that its response rendered CMS's decision nonfinal. *See* ECF No. 1 ¶ 21. Not so. That section provides that

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

---

[5] Citing a joint status report filed in *Fresenius Kabi I*, Fresenius Kabi asserts that "CMS stated that the agency did not intend to timely respond" to its "pre-suit letter." ECF No. 25 at 11 (citing *Fresenius I*, ECF No. 25 ¶¶ 5–6). Not quite. In that report, filed less than two weeks after Fresenius Kabi's response letter, CMS said that it was "evaluating Fresenius Kabi's written response" and had "informed Fresenius Kabi that CMS [was] unable to issue a response *by December 2, 2024, as requested by Fresenius Kabi*." *Fresenius Kabi I*, ECF No. 25 ¶¶ 5–6 (emphasis added). Thus, all CMS told Fresenius Kabi was that it could not respond within Fresenius Kabi's preferred timeframe.

5 U.S.C. § 704.  This provision merely relieves a party from seeking reconsideration or adminis-trative appeal of an "*otherwise final*" agency action before seeking review in district court.  *Id.* (emphasis added); *see Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284–85 (1987).  But for all the reasons already explained, CMS's decision was not "otherwise final" agency action.  And so, also for the reasons already explained, Fresenius Kabi's response was not a request for reconsideration, but a submission of additional information which triggered ongoing agency review.  Thus, Section 704 does not aid Fresenius Kabi.[6]

---

[6] Even if the Court accepted Fresenius Kabi's argument that CMS's decision was final because it marked the consummation of the agency's process, its APA challenge would still be unfit for judicial review.  That is so because its response would then be a request for reconsidera-tion—which would render its present APA challenge premature.  *See O'Sullivan*, 2024 WL 1071045, at *5 ("[R]egardless of how the []submission is characterized," what matters is that a party is "in fact seeking reconsideration and modification of the agency's prior decision, which renders that decision non-final.") (citation modified).  And "[i]f a party asks an agency to recon-sider its prior decision, the request 'renders an agency's otherwise final action non-final with re-spect to the requesting party,' and therefore unreviewable." *Vanda Pharms. Inc. v. FDA*, 23-cv-2812 (CRC), 2024 WL 4133623, at *6 (D.D.C. Sept. 10, 2024) (quoting *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002)); *see O'Sullivan*, 2024 WL 1071045, at *3 ("The law is 'well-established that a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order.'") (quoting *Tenn. Gas Pipeline Co. v. FERC*, 9 F.3d 980, 980 (D.C. Cir. 1993) (per curiam); *see also e.g.*, *Perry v. DOE*, 20-cv-2003 (JEB), 2021 WL 289358, at *1 (D.D.C. Jan. 28, 2021) ("In now moving to dismiss, Defendants point out that [the agency] is currently reconsidering its denial decision; as a result, there is no final agency action that could undergird an Administrative Procedure Act suit.").  In this case, Section 704 would not provide Fresenius Kabi an avenue for judicial review either.  That provision "has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *Interstate Com. Comm'n*, 482 U.S. at 284–85.

## IV.      Conclusion

For all these reasons, the Court will grant Defendants' motion and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 30, 2026